UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ALFWEAR, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>KULKOTE, LLC; ALFA ADHESIVES, INC.; and DARREN GILMORE,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [ECF NO. 386] PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**<br><br>Civil No. 2:19-cv-00027<br><br>District Judge David Barlow |

Plaintiff Alfwear, Inc. ("Alfwear") moved for a permanent injunction against Defendants KulKote LLC, Alfa Adhesives, Inc., and Darren Gilmore (collectively, "Defendants" or "KulKote") after a jury entered its verdict, which found trademark infringement and unfair competition but awarded no damages.[1] Having reviewed the parties' briefing, the court grants in part the motion for the reasons outlined below.

## BACKGROUND

This case involves a trademark dispute between Alfwear and KulKote.[2] At the conclusion of a five-day jury trial, the jury entered a verdict against KulKote on liability.[3] The jury, however, did not find that Alfwear had been actually harmed and awarded no damages to Alfwear.[4] After trial, Alfwear filed a motion for a permanent injunction, but because Defendants

---

[1] Pl.'s Mot. for Perm. Inj. ("Mot."), ECF No. 386, filed Jan. 30, 2026.
[2] A more detailed background is provided in the court's Mem. Decision and Order Denying Defs.' Renewed Mot. for J. as a Matter of L., ECF No. 428, filed May 8, 2026.
[3] *See* Verdict Form, ECF 384, filed Jan. 16, 2026.
[4] *See id.*

renewed their motion for judgment as a matter of law ("JMOL"), the court first resolved that motion.[5] Having denied the renewed JMOL, the court now addresses Alfwear's request for injunctive relief.

## STANDARD

Under the Lanham Act, district courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable" for such violations as trademark infringement.[6]

In the Tenth Circuit, courts consider four factors when determining whether to issue a permanent injunction:

(1) actual success on the merits,

(2) irreparable harm unless the injunction is issued,

(3) the threatened injury outweighs the harm that the injunction may cause the opposing party, and

(4) the injunction, if issued, will not adversely affect the public interest.[7]

The court addresses each factor and then turns to the scope of the proposed injunction.[8]

## DISCUSSION

I.      **Equitable Factors**

    A.      **Irreparable Harm**

---

[5] *See* ECF Nos. 386, 412.

[6] 15 U.S.C. § 1116(a).

[7] *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1164 (10th Cir. 2013).

[8] Defendants repeatedly argue that a permanent injunction is an "extraordinary remedy." That is true for *preliminary* injunctive relief—because the relief comes before the case is decided on the merits—not post-verdict permanent injunctions. *See* McCarthy on Trademarks and Unfair Competition § 30:1 (5th ed.) ("A permanent injunction is the usual and normal remedy once trademark infringement has been found in a final judgment.").

Alfwear claims that it will face irreparable harm from "Defendants' continued use of the KülKōte Marks" because such use "puts KÜHL's reputation in Defendants' hands, as well as in the hands of third parties that use Defendants' technology."[9] Alfwear also argues that Defendants will continue their infringing—and possibly expand it—without an injunction.[10] Alfwear also claims the jury verdict results in a rebuttable presumption of irreparable harm.[11]

Defendants counter that Alfwear has not met its heavy burden to establish irreparable harm because the "jury's specific finding of no actual damage to Alfwear is strong proof of no irreparable harm to Alfwear" and no evidence came in at trial that Alfwear has been damaged by the use of the KulKote marks.[12] Defendants also argue the presumption does not apply because the jury's verdict found no actual harm.[13]

"[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary [or permanent] injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered."[14] "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."[15] The Tenth Circuit has described the showing needed to establish irreparable harm as "not an easy

---

[9] Pl.'s Mot. for Perm. Inj. ("Mot.") 4, ECF No. 386, filed Jan. 30, 2026.

[10] Mot. 4–5.

[11] *Id.*

[12] Defs.' Opp'n to Pl.'s Mot. for Perm. Inj. ("Opp'n") 13–20, ECF No. 389, filed Jan. 30, 2026.

[13] *Id.*

[14] *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004)). *See also Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (explaining that the standard for a permanent injunction "is remarkably similar to the standard for a preliminary injunction" and the "only measurable difference between the two is that a permanent injunction requires actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits").

[15] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)).

burden to fulfill."[16] "A district court may find irreparable harm 'based upon evidence suggesting that it is impossible to precisely calculate the amount of damage plaintiff will suffer.'"[17] But the actual or imminent harm must be the kind that "cannot be compensated after the fact by money damages."[18] While not binding, McCarthy on Trademarks has stated that "[i]n the context of a permanent injunction, 'irreparable' injury is the kind of damage that continues following a final judgment and that, under an objective view of judicial equity and fairness, should be halted by a court ordered injunction."[19]

The Lanham Act provides that a plaintiff seeking an injunction "shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits."[20] The presumption was incorporated in 2020 when Congress enacted the Trademark Modernization Act.[21]

Defendants argue that the jury's specific finding of no actual damage rebuts the presumption of irreparable harm.[22] For support, they cite *Active Sports Lifestyle USA, LLC v. Old Navy LLC*, an unpublished district court case from California, in which the court denied a

---

[16] *See, e.g.*, *Malamed*, 874 F.3d at 1141 (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)).

[17] *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (quoting *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir.1990) (cleaned up).

[18] *Colo. v. U.S. E.P.A.*, 989 F.3d 874, 884 (10th Cir. 2021) (internal quotation marks and citation omitted).

[19] McCarthy on Trademarks and Unfair Competition § 30:2 (5th ed.). McCarthy elaborates further that "'[i]rreparable harm' for a final injunction in a trademark infringement case[] usually flows from the fact that the trademark owner has already proven a likelihood of confusion. Likelihood of confusion of customers means the trademark owner's business reputation and goodwill are in jeopardy. This likelihood of confusion will continue and deprive the consuming public of a truthful marketplace. . . . If likelihood of confusion is allowed to continue, then the plaintiff's reputation (and its trademark symbol) is at risk because it is in the hands of a stranger." *Id*.

[20] 15 U.S.C. § 1116(a); *Pure Maint. Holdings, LLC v. Mold Zero Servs., LLC*, 1:25-cv-00111, 2025 WL 2374353, at *4 (D. Utah Aug. 14, 2025).

[21] *See* 15 U.S.C. § 1116(a); *Blendtec Inc. v. Blendjet Inc.*, 2:25-cv-00096, 2025 WL 2661555, at *10 (D. Utah Sept. 17, 2025); McCarthy on Trademarks & Unfair Competition § 30:47 (5th ed).

[22] Opp'n 11–14.

permanent injunction after a jury found infringement but awarded no damages.[23] The court reasoned that although "a failure of proof of damages does not doom a request for equitable relief," the verdict in that case "indicates that the infringement is not what was driving sales" or damaging "the goodwill associated with [plaintiff's] mark."[24] However, the case bears no precedential weight, is factually inapposite because the jury did not find willful infringement, and predates the rebuttable presumption.[25] Additionally, the *Active Sports Lifestyle* court noted that it was bound by Ninth Circuit decisions it believed compelled the result. And although the Tenth Circuit has not weighed in on the effect of a willful infringement verdict with no damages on the presumption in 15 U.S.C. § 1116(a), it has held that "a lack of monetary damages is not necessarily inconsistent with a permanent injunction."[26] The Tenth Circuit has reasoned that "the only proper inference that can be drawn from its damages verdict is that [plaintiff] did not adequately prove monetary damages."[27] The same is true here. Therefore, the court concludes that the jury's refusal to award damages here does not rebut the presumption of irreparable harm.[28]

Even without the presumption, this factor favors Alfwear. Based on the jury's verdict, it is indisputable that KulKote willfully infringed Alfwear's trademark rights. As with most cases involving trademark infringement and unfair competition, "injunctive relief is the remedy of

---

[23] Opp'n 13–14 (citing *Active Sports Lifestyle USA, LLC v. Old Navy LLC*, No. SACV 12-572, 2014 WL 1246497 (C.D. Cal. Mar. 21, 2014).

[24] *Active Sports Lifestyle USA, LLC*, 2014 WL 1246497, at *3.

[25] *See id.*

[26] *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs*, 613 F.3d 1229, 1240 (10th Cir. 2010) (internal quotation marks and citation omitted).

[27] *Id.*

[28] Defendants also suggest that Rule 301 of the Federal Rules of Evidence most likely governs how the presumption works, which shifts the burden of production, but not persuasion, to the movant. Opp'n 12–13. Because the Tenth Circuit has yet to apply Rule 301 in the context of 15 U.S.C. § 1116(a) and doing so here would not alter the outcome, the court declines to analyze the presumption under Rule 301.

choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."[29] The jury concluded, by finding infringement, that consumers are likely to confuse the KülKōte marks with the KÜHL marks. Therefore, continued use of the KülKōte marks risks Alfwear's reputation, and "loss of control over a business's reputation and loss of goodwill can constitute irreparable harm."[30]

Irreparable harm is also demonstrated by evidence that Defendants are unlikely to cease the infringement without an injunction. Given the conflicting evidence at trial of Defendants' characterization of their use of the KülKōte marks and the jury's verdict of willfulness, it is reasonable to conclude that Defendants are unlikely to cease infringement absent an injunction. Alfwear's evidence at trial demonstrated that Defendants use the KülKōte marks in consumer-facing advertising despite Defendants' insistence otherwise.[31] Their consumer website advertises KülKōte temperature-regulating technology and promotes its certified partners that sell products with that technology.[32] KulKote also created social media postings suggesting its product was already being used in clothing.[33] And KulKote designed hang tags for KülKōte shoemaking "partners" to use with their shoes.

In response, Defendants argue they have shut down the consumer website and directed viewers, instead, to their manufacturer website, which now states that KulKote is not suitable for

---

[29]*BMW of N. Am., LLC v. Issa*, No. 2:19-cv-220, 2020 WL 1325278, at *8 (D. Utah Mar. 20, 2020 (citation and internal quotation marks omitted).
[30] *Equitable Nat'l Life Ins. Co., Inc. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1253 (D. Utah 2020).
[31] Trial Tr. 873:19–874:7, 875:15–877:2.
[32] *Id.*
[33] *See, e.g.*, Pl. Trial Ex. 367.002.

use with clothing.[34] Furthermore, Defendants claim they have taken down the webpages that featured footwear with KulKote.[35] These efforts, they argue, have eliminated ongoing harm.

This argument fails on two fronts. First, "a defendant claiming that its voluntary compliance moots a case bears a formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[36]

Second, "a district court is bound both by a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's verdict."[37] Here, the jury's verdict found not just infringement, but also willfulness, which suggests credibility issues with Defendants. For instance, Defendants gave conflicting testimony about whether KulKote was already in or would enter the clothing industry. At first, Darren Gilmore testified that KulKote has never had customers in the clothing industry and does not intend to expand into it.[38] Yet he also testified that "it would be great if we partnered with somebody like KUHL to be able to develop a product." Similarly, Drew Gilmore initially attempted to downplay the fact KulKote listed clothing as an industry on its website, claiming they were just "trying to cast this big net" of customers.[39] But when asked why KulKote's website still mentions clothes along with shoes,

---

[34] Opp'n 2; Decl. of Mr. Darren Gilmore ("Gilmore Decl.") ¶¶ 10–11, ECF No. 391, filed Jan. 30, 2026.

[35] Opp'n 2: Gilmore Decl. ¶ 12.

[36] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks and citation omitted). *See also Sunlighten, Inc. v. Finnmark Designs, LLC*, 595 F. Supp. 3d 957, 973 (D. Nev. 2022) ("[Defendant] provides no binding or persuasive authority to support the contention that a court cannot award injunctive relief in the face of a defendant's voluntary cessation of infringing activity."); *Rolex Watch USA, Inc. v. Zeotec Diamonds, Inc.*, No. CV02-01089, 2003 WL 23705746, at *5 (C.D. Cal. Mar. 7, 2003) ("The Ninth Circuit has held that a request for a permanent injunction in an infringement case is not mooted when a defendant voluntarily ceases all wrongful operations.") (citing *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986)).

[37] *Rocky Mountain Christian Church*, 613 F.3d at 1240 (quoting *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 (10th Cir. 2004)).

[38] Trial Tr. 644:24–645:7.

[39] *Id.* 375:6–17.

Drew Gilmore testified it was "[b]ecause we would love to be in those, selling to that industry."[40] Against this backdrop, Alfwear presented evidence of KulKote's website and social media postings that suggested KulKote already was being used in clothing.[41] Thus, the court declines to credit Defendants' claims they have ended any ongoing harm just as the jury declined to credit their testimony at trial. Indeed, the evidence at trial suggests that an injunction will be necessary for the conduct to cease. For these reasons, the irreparable harm factor favors Alfwear.

### B.    Actual Success on the Merits

Likewise, the jury's verdict demonstrates actual success on the merits. The jury explicitly found that each of the Defendants infringed Plaintiff's marks and that the infringement was willful.[42] It also found that each of the Defendants engaged in federal and common law unfair competition.[43] This is more than sufficient to demonstrate actual success on the merits, despite the failure to prove monetary damages.[44] Therefore, the award of no damages has little bearing on injunctive relief here, and this factor favors Alfwear.

### C.    Balance of Harms

Next, Alfwear argues that its injury in the absence of an injunction outweighs any harm Defendants may suffer.[45] Defendants respond that the injunction "would impose severe hardship on KulKote."[46] Specifically, KulKote would need to rebrand its entire business, reestablish a relationship with existing customers under a different brand, and eliminate its products already

---

[40] *Id.* 446:1–4.
[41] Pl. Trial Ex. 367.002.
[42] Verdict Form, ECF No. 384.
[43] *Id.*
[44] *See* McCarthy on Trademarks & Unfair Competition § 30:2.50 (5th ed.) ("It is notoriously difficult for the owner of a trademark to prove measurable damage caused by acts of infringement.").
[45] Mot. 6.
[46] Opp'n 21–23.

branded under the KülKōte marks.[47] Defendants claim they would also suffer significant reputational harm from losing the KülKōte brand.[48] Finally, Defendants argue that their remedial efforts after trial, described above, obviate the need for an injunction as there is no more harm to Alfwear.[49]

On this factor, courts must "consider[] the balance of hardships between the plaintiff and defendant" to determine whether "a remedy in equity is warranted."[50] Yet it is also well-established that in a case involving infringement, "any harm the Defendants suffer from the injunction is the result of their own misconduct."[51]

Here, the balance of harms clearly weighs against Defendants. First, Defendants overstate the speculative reputational harm that may occur from losing the KülKōte brand. At trial, Defendants emphasized how they sell their chemical product to manufacturers "face-to-face."[52] They also insisted the process of building the relationship took years.[53] Because this personal type of marketing hinges more on the relationship, not on the brand, any harm Defendants may incur in discontinuing the KülKōte brand is minimal. Second, Defendants also presented evidence that KulKote uses Alfa Adhesives' customer base and that the two companies have a close business relationship.[54] As a result, customers' familiarity with Alfa Adhesives should ease any transition during KulKote's name change. Next, Defendants' remedial efforts post-trial are

---

[47] *Id.* at 22.
[48] *Id.*
[49] *Id.* at 21.
[50] *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).
[51] *ClearOne Commc'ns v. Chiang*, 608 F. Supp. 2d 1270, 1281 (D. Utah 2009).
[52] Trial Tr. 585:18–19, 607:21, 625:1–2, 6–18.
[53] *Id.* 625:1–2.
[54] *Id.* 340:16–25, 426:9–427:5, 636:5–7.

the type that can easily be reversed without an injunction.[55] And most significantly, "when the case for infringement is clear," the Tenth Circuit instructs that "the court should not consider any financial harms to a defendant's business built upon that infringement."[56]

Accordingly, Defendants' burden is outweighed by the harm caused by their infringement, and this factor weighs against them.

### D.   Public Interest

Under the final factor, Alfwear argues that an injunction would be in the public interest because it would avoid confusion.[57] Defendants counter there is no need to protect the public from confusion because "the public interest is fully protected by the jury's liability finding and the availability of damages should Alfwear ever be able to prove actual injury."[58]

"Public interest can be defined in a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused."[59] Here, the jury's verdict found that consumers are likely to be confused in the marketplace between the KÜHL and KülKōte marks. As a result, a permanent injunction serves the public's interest in not being confused, and this factor favors Alfwear. Similarly, it is in the public interest for the laws to be enforced, which includes violations of the Lanham Act. Because the court concludes that the infringing conduct is likely to continue in the absence of an injunction, an injunction is needed here to support the law.

---

[55] *Id.* 469:12–15, 872:17–873:18.
[56] *Pure Maint. Holdings, LLC*, 2025 WL 2374353, at *5 (quoting *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007).
[57] Mot. 6–7.
[58] Opp'n 23.
[59] *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990); *Tsunami Softgoods, Inc. v. Tsunami Int'l, Inc.*, No. 2:00-cv-738, 2001 WL 670926, at *6 (D. Utah Jan. 19, 2001).

In sum, Alfwear has satisfied the four-factor test and established a right to injunctive relief.

## II.    Scope

Having determined that Alfwear is entitled to a permanent injunction, the court now turns to the scope of the proposed injunction. Defendants argue that Alfwear's proposal is too "expansive," particularly given that the jury found that in the decade or so that the parties have co-existed, Alfwear has not been damaged by Defendants' infringement.[60] Alfwear responds that a narrower injunction would risk "continued consumer confusion" and impose "a significant burden" on Alfwear to monitor continued uses of the KülKōte marks.[61]

The scope of a permanent injunction must balance two established principles: the requirement that "an injunction must be narrowly tailored to remedy the harm shown,"[62] and the "safe distance rule" [that] allows courts, in situations in which a defendant has been found liable for infringement and unfair competition, to require a defendant "to keep a safe distance away from the margin line."[63]

Here, the proposed injunction includes some reasonable terms, but Alfwear has not properly tailored it in the following ways. First, its prohibitions related to the KÜHL marks are irrelevant or unsupported by the evidence. This is not a case of counterfeiting or copying Alfwear's marks, nor did the evidence at trial show that Defendants have used or displayed the KÜHL marks. Thus, the court rejects the conditions that imply such behavior. Second, the

---

[60] Opp'n 14, 22.
[61] Mot. 9–10.
[62] *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 752 (10th Cir. 2011) (quoting *Garrison v. Baker Hughes Oilfield Operations, Inc.,* 287 F.3d 955, 962 (10th Cir. 2002).
[63] *John Allan Co. v. Craig Allen Co. LLC*, 540 F.3d 1133, 1142 (10th Cir. 2008) (quoting *Taubman Co. v. Webfeats*, 319 F.3d 770, 779 (6th Cir. 2003)); McCarthy on Trademarks & Unfair Competition § 30:21 (5th ed.).

proposal to prohibit "any variation" of the KülKōte marks, "including any mark that includes the letters KÜL or KUL" is overly broad. The jury found a likelihood of confusion on the basis of only the three KülKōte marks presented at trial. Accordingly, those are the only marks—not variations of them—that Alfwear may enjoin. Next, Defendants have not persuaded the court that destruction of the KülKōte marks is necessary when Defendants are being enjoined from using them. And finally, the court finds no basis to require Defendants to file a report with the court that details their compliance with the court's injunction. No evidence has been supplied that Defendants are likely to violate the court's order.

However, the court concludes that the proposed injunction's prohibition on Defendants, certified partners, and other related third parties from using the KülKōte marks is reasonable.[64] An injunction against all three categories of users may seem broad, but it is necessary to prevent continued violation of KÜHL's trademark rights and confusion in the marketplace where Defendants have approved third-party use of their product, including "certified partners" who sell products with KulKote's technology to consumers.[65] Likewise, the injunction's prohibition on use of the KülKōte marks in social media and public events is necessary given the evidence showing Defendants' use of such public spaces to promote the KülKōte marks. It is also necessary to reduce the risk of confusion among consumers.[66] And finally, the injunction's complete ban on any use of the KülKōte marks aligns with the jury's finding that Defendants' infringement was willful. Therefore, the court adopts these findings into its contemporaneously issued permanent injunction.

---

[64] Pl.'s Proposed Perm. Inj. ("Proposed Inj.") ¶ 1, ECF No. 386-1, filed Jan. 30, 2026.
[65] Trial Tr. 445:6–9, 448:21–450:18.
[66] *See* Proposed Inj. ¶ 1.

# ORDER

IT IS HEREBY ORDERED that Alfwear's Permanent Injunction is GRANTED IN PART. [67] An order containing the precise terms of the injunction will be entered separately.

Signed May 18, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[67] ECF No. 386.